IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 10, 2026

## CEDRIC TAYLOR v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2018-B-914     Cheryl A. Blackburn, Judge**

_____

### No. M2025-00674-CCA-R3-PC

_____

The Petitioner, Cedric Taylor, entered a guilty plea to possession with intent to deliver twenty-six grams or more of cocaine and resisting arrest, for which he received an effective sentence of fourteen years in confinement. The Petitioner sought post-conviction relief claiming ineffective assistance of counsel based on trial counsel's failure to pursue a motion to suppress to challenge the constitutionality of the stop and subsequent search of his vehicle, and trial counsel's failure to appeal his sentence. The Petitioner also claimed that his guilty plea was unknowingly and involuntarily entered due to trial counsel's misleading advice that he would likely be sentenced to probation. Following a hearing, the post-conviction court granted relief, in part, and ordered a delayed appeal based on trial counsel's failure to appeal the Petitioner's sentence. This court subsequently affirmed the trial court's denial of the Petitioner's request to serve his sentence on community corrections. See State v. Taylor, No. M2024-00192-CCA-R3-CD, 2024 WL 3879116, at *1 (Tenn. Crim. App. Aug. 20, 2024), appeal denied (Tenn. Nov. 14, 2024). The post-conviction court entered an order denying the issues that were held in abeyance, and the Petitioner now appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and MATTHEW J. WILSON, J., joined.

Nathan S. Moore, Nashville, Tennessee, for the appellant, Cedric Taylor.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Joshua R. Gilbert, Assistant Attorney General (*pro hac vice*); Glenn R. Funk, District Attorney General; and Vince Wyatt and Ed Ryan, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

At the November 1, 2021 guilty plea hearing, the Petitioner stipulated to the following facts:

[O]n [October 31, 2017,] at approximately 3:00 p.m., detectives with the Metro Nashville Police Department observed [the Petitioner]'s vehicle traveling eastbound on I-40 going sixty-five in a fifty-five mile an hour zone.

Upon activating the emergency equipment, the [Petitioner] pulled the vehicle to the side of the road. Immediately upon exiting the police vehicle, the detective could smell an obvious odor of marijuana. While speaking with the [Petitioner] at the window of his vehicle, the odor of marijuana was very strong and was emitting from inside the [Petitioner]'s vehicle.

The [Petitioner] was asked to step from the vehicle[ ] [a]t which time, he refused to exit the vehicle and rolled up the windows. After approximately thirty to forty-five minutes of speaking with the [Petitioner], a supervisor arrived at the scene, spoke with the [Petitioner] who ended up exiting the vehicle.

During a search of the [Petitioner]'s vehicle, small white rocks were recovered under the driver's seat which field[-]tested positive for a cocaine base. Detectives attempted to search the glovebox and found it was locked. When asked for the keys to unlock the glovebox, the [Petitioner] refused to produce the key. When detectives attempted to place the [Petitioner] under arrest, he physically resisted their attempts to place handcuffs on his person.

After getting the keys to the glovebox, a further search of the [Petitioner]'s vehicle yielded approximately four hundred and fifty-six grams of marijuana, fifty-four grams of cocaine and thirteen grams of crack cocaine concealed inside the . . . glovebox.

At the guilty plea hearing, the Petitioner agreed to plead guilty to possession with intent to sell over twenty-six grams of a Schedule II controlled substance and resisting arrest, with the length of the sentence to be determined by the court. During the guilty plea colloquy, the Petitioner stated that he fully understood the terms of his plea agreement. The Petitioner acknowledged that he was pleading guilty because he was guilty, and that no one "threatened [him] with anything or promised [him] anything in order to get [him] to enter this plea." The Petitioner also agreed that he was given the opportunity to discuss

his case in detail with trial counsel, that he was satisfied with trial counsel's representation, and that he did not have "any complaints whatsoever[.]"

The trial court explained that the Petitioner's sentence would be determined at a later sentencing hearing. It further noted that the applicable sentencing range would be either eight to twelve years as a Range I offender or twelve to twenty years as a Range II offender. At the conclusion of the guilty plea hearing, the Petitioner stated that he understood his pleas and had no questions about the charges to which he was pleading guilty or the penalties being imposed. The court then accepted the plea, finding that "there's a factual basis to support the plea, [the Petitioner] [is] competent to enter said plea and that [the Petitioner] [is] doing so freely, knowingly and voluntarily." The court set the sentencing hearing date for January 12, 2022.

At the sentencing hearing, the Petitioner testified, in relevant part, as follows:

When asked why he asked for a supervisor during the stop, [the Petitioner] testified:

I asked for a sergeant or a supervisor due to the fact because he said he pulled me over for speeding, and I thought to myself that was impossible due to traffic. You know, talking about the gravity, you know what I'm saying, of the road. So I thought it was impossible. So I was like come on now, you say you pace me going 65 in a 55. Well, if you're familiar with that area, that area got a lot of curves in it. Talking about its got a lot of down sides so with the gravity. So my thing is if you pace me, how did you pace me on an unlevel surface? And so that was my thing. And he was like well, [Petitioner], he said you did this. I complied with the officer and I got out of the car. The officer said he smelled marijuana, but I told him there ain't no way, I just left the carwash.

[The Petitioner] testified that he was not aggressive toward the officers and agreed that he moved his hands from the back to the front when they attempted to handcuff him.

[The Petitioner] admitted that he was in possession of drugs at the time of his arrest but denied intent to deliver. When asked why he pled guilty to the charge of possessing drugs with the intent to deliver, [the Petitioner] replied: "I pl[ed] guilty at that time because y'all said if I didn't plead guilty, you know what I'm saying, my severity and my punishment would be

- 3 -

worser." When asked by the trial court why he pled guilty, [the Petitioner] said: "I pled guilty due to the circumstances if I didn't cop out for this right here and I go to trial, each charge that I was convicted of, y'all talking about that would be consecutive. You know what I'm saying? That could be extensive long period of time me being away." When asked by the trial court if he wanted to withdraw his guilty plea, [the Petitioner] replied, "No."

State v. Taylor, 2024 WL 3879116 at *2.

On October 28, 2022, the Petitioner filed a pro se petition for post-conviction relief, alleging that he was denied effective assistance of counsel. The Petitioner argued that trial counsel "faile[d] to investigate" his case regarding whether the police stop of his vehicle and subsequent search violated his Fourth Amendment rights. The post-conviction court appointed counsel and, on May 20, 2023, post-conviction counsel filed an amended petition. The amended petition further alleged that trial counsel was ineffective for (1) "fail[ing] to attack the issue of the constitutionality of the stop of the Petitioner's vehicle and the subsequent search," (2) "advising Petitioner to plea 'open' to the counts against him," (3) and "not appealing Petitioner's sentence to the Tennessee Court of Criminal Appeals." The State filed a written response denying the allegations contained in the petition.

At the November 15, 2023 post-conviction hearing, the Petitioner testified in relevant part that trial counsel communicated with him throughout the case, provided discovery, and reviewed the facts with him. He admitted that after being stopped by police, he refused to exit his vehicle until a supervisor arrived, but he complied once another officer arrived at the scene. He acknowledged that the officer reported smelling marijuana coming from the locked glove box, where officers ultimately discovered over 400 grams of marijuana, 54 grams of powder cocaine, and 13 grams of crack cocaine. The Petitioner maintained that his Fourth Amendment rights had been violated.

The Petitioner stated that trial counsel told him there was a "strong possibility" that he could receive probation if he entered a guilty plea. The Petitioner said that he discussed the option of going to trial with trial counsel, and that trial counsel advised that going to trial "would be worse," explaining his potential exposure and the risk of receiving the maximum sentence. When asked if he believed trial counsel was trying to scare him into entering a guilty plea, the Petitioner responded, "I have no idea. I can't -- I don't know what his intention was[.]" The Petitioner agreed that but for his communications with trial counsel, he would have chosen to proceed to trial. Although he had previously indicated at the plea hearing that he was satisfied with trial counsel's representation, the Petitioner testified that this was no longer the case.

- 4 -

Trial counsel testified that, although the Petitioner had previously been represented by several different attorneys throughout the case, he began representing the Petitioner in early 2021. Trial counsel stated that he reviewed discovery with the Petitioner and discussed the strengths and weaknesses of his case. He stated that the Petitioner was "very adamant" about filing a motion to suppress, as he believed the stop and search were unlawful. Trial counsel testified that he "didn't think that there was any justification [for] filing a motion to suppress," and that he discussed the matter with the Petitioner for "a good amount of time." Regardless, trial counsel stated that he filed the motion to suppress, but no hearing was held on the motion. He could not recall why there was no hearing.

Trial counsel further stated that he advised the Petitioner there were "two tracks" he could pursue—trial or a guilty plea. Trial counsel said that he informed the Petitioner that, if he chose to proceed to trial, "there was a strong chance that he would be found guilty" and "the sentence for that would be greater than whatever it is that we can agree on right now." Trial counsel said that he had received multiple offers from the State, but the Petitioner informed him that his previous attorney had secured a more favorable offer. Trial counsel stated that he met with both the District Attorney and the Attorney General in an attempt to secure a more favorable offer for the Petitioner; however, he was informed that the prior offer was "time sensitive" and was no longer available. Trial counsel confirmed that the Petitioner eventually chose to enter a guilty plea rather than face the possibility of a sentence of up to twenty-four years if convicted at trial. He stated that he believed the Petitioner "fully comprehended the potential consequences" of entering a guilty plea.

The post-conviction court entered an order on May 2, 2025, and denied the remaining issues raised in the Petitioner's post-conviction petition that previously had been held in abeyance. The post-conviction court reasoned, in pertinent part, as follows:

> Petitioner's main contention was that [trial counsel] . . . "failed to investigate the facts and circumstances of his case and improperly advised him that his chances of winning the suppression issue would not be successful." Petitioner's contention is rooted in his belief that the police stop of his vehicle and the subsequent search violated his Fourth Amendment protections. Petitioner also contends trial counsel was ineffective by "advis[ing] him that upon his plea he could expect to receive probation." Petitioner contends counsel's ineffective assistance rendered his choice to plead guilty unknowing and involuntary.
>
> "Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner." Goad, 938 S.W.2d at 369. Thus, an attorney's failure to prepare

- 5 -

for a dispositive motion hearing or to investigate the circumstances of a potential Fourth Amendment violation can be the basis of ineffective assistance of counsel. However, the post-conviction petitioner bears the burden of establishing that counsel's actions prejudiced him, and in this case, Petitioner has failed to establish that his attorneys' failure to pursue a hearing on a motion to suppress the search prejudiced him. The only evidence Petitioner presented regarding his claim that the search of his vehicle was illegal was his own self-serving testimony. As stated above, the Court does not find Petitioner's testimony credible. Petitioner did not present testimony from the officers involved in the stop and search, nor did Petitioner present any video recordings of the stop, if any such evidence exists.

Perhaps more importantly, at both the plea acceptance hearing and the post-conviction hearing, Petitioner acknowledged that the police pulled him over for speeding, and that the police sought to search his car based on the odor of marijuana. Petitioner refused to open his car's doors or windows before a supervising officer arrived; once the supervisor arrived, Petitioner exited his vehicle. These facts, if established at a suppression hearing, would have led the reviewing court to find the stop and search of Petitioner's vehicle valid. [Trial counsel] and Petitioner both testified that the attorney told his client that a motion to suppress would have been denied, and there is nothing in the record to contradict counsel's reasoned assessment.

Petitioner contends he pleaded guilty in part because [trial counsel] told him that it was likely that he would be sentenced to probation. However, as stated above, this Court does not consider Petitioner to be a credible witness. [Trial counsel] testified that he discussed Petitioner's potential sentencing ranges with him and told Petitioner that a guilty plea represented perhaps his only possibility for being sentenced to probation. As stated above, the Court finds [trial counsel]'s testimony credible. The proof from the post-conviction hearing established that [trial counsel] attempted to obtain the best sentence possible for Petitioner during plea negotiation. [Trial counsel]'s efforts included meeting with the elected District Attorney General in an attempt to have the State offer a previously offered sentence that was more favorable to Petitioner than those offered while [trial counsel] represented Petitioner. Such actions were well within the range of competence expected for criminal defense attorneys.

This evidence is more than sufficient for the Court to conclude that Petitioner's resulting guilty plea was not unknowing and involuntary. The evidence established Petitioner told counsel about Petitioner's intention to

challenge the legality of his stop and search. [Trial counsel] filed a suppression motion, but after attorney and client discussed the case, Petitioner chose to plead guilty. The transcript of the plea acceptance hearing supports the conclusion that Petitioner fully understood the consequences of his plea, and nothing in that transcript suggests Petitioner had any problem with his attorney's performance.

Thus, as to the issues not addressed in the Court's January 2024 order, the Court concludes [trial counsel]'s actions in representing Petitioner did not constitute deficient performance, and counsel's representation did not prejudice Petitioner as to these issues. Thus, Petitioner has failed to establish he received the ineffective assistance of counsel. Petitioner has also failed to establish his guilty plea was unknowing or involuntary. He is not entitled to post-conviction relief.

It is from this order that the Petitioner now appeals.

## ANALYSIS

The Petitioner contends the post-conviction court erred in denying relief because his guilty plea was not entered knowingly and voluntarily. Specifically, the Petitioner asserts that he pled guilty based on trial counsel's "misleading assurances and failure to fully advise him about critical issues." The Petitioner also contends that trial counsel did not "properly pursue the suppression issues." The State responds that the post-conviction court properly denied relief because the Petitioner failed to establish that he received ineffective assistance of counsel. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Id. § 40-30-110(f); see Tenn. Sup. Ct. R. 28, § 8(D)(1); Nesbit v. State, 452 S.W.3d 779, 786 (Tenn. 2014). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

A claim for post-conviction relief based on alleged ineffective assistance of counsel presents a mixed question of law and fact. Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013) (citing Calvert v. State, 342 S.W.3d 477, 485 (Tenn. 2011)). This court reviews "a post-conviction court's conclusions of law, decisions involving mixed questions of law and

fact, and its application of law to its factual findings de novo without a presumption of correctness." Whitehead v. State, 402 S.W.3d 615, 621 (Tenn. 2013) (citing Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Calvert, 342 S.W.3d at 485). However, a post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Calvert, 342 S.W.3d at 485 (citing Grindstaff, 297 S.W.3d at 216; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). "Accordingly, appellate courts are not free to re-weigh or re-evaluate the evidence, nor are they free to substitute their own inferences for those drawn by the post-conviction court." Whitehead, 402 S.W.3d at 621 (citing State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001)). "As a general matter, appellate courts must defer to a post-conviction court's findings with regard to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Id. (citing Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999)).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010). To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Id. (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). "[T]he record of acceptance of a defendant's plea of guilty must affirmatively

demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" Mackey, 553 S.W.2d at 340; see Tenn. R. Crim. P. 11(b)(1). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Lane, 316 S.W.3d at 562 (quoting Grindstaff, 297 S.W.3d at 218). If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void. Id. (citations omitted).

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). In determining whether a guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

**I.  Guilty Plea.**  The Petitioner claims his guilty plea was unknowingly and involuntarily entered because (1) trial counsel misled him into believing that there was a "strong possibility" that he would receive probation upon entering a guilty plea; and (2) trial counsel attempted to frighten him into pleading guilty. Citing Blankenship, 858 S.W.2d at 904, but without providing any analysis of the relevant factors, the Petitioner asserts that his reliance on trial counsel's "inaccurate prediction" renders his plea involuntary.

At the post-conviction hearing, the Petitioner testified that he discussed the possibility of going to trial with trial counsel, who advised the Petitioner that he would face the maximum sentence if he proceeded to trial. The Petitioner claimed he entered a guilty plea because trial counsel erroneously advised him that he would likely be sentenced to probation. Trial counsel testified that he reviewed the strengths and weaknesses of the case with the Petitioner and advised him that he could either proceed to trial or plead guilty. Trial counsel stated that he told the Petitioner that "we could go to trial and there was a strong chance that [the Petitioner] would be found guilty. And the sentence for that would

be greater than whatever it is that we can agree on right now." Trial counsel stated that he received several offers from the State, but the Petitioner told him that his prior attorney had secured a more favorable offer. Trial counsel then met with the District Attorney to obtain the earlier offer for the Petitioner, but he was informed that it had expired and had been withdrawn.

During the guilty plea hearing, the trial court explained to the Petitioner that, as a Range II offender, he would face a sentence range of twelve to twenty years' imprisonment. The Petitioner acknowledged that he understood the terms of his plea agreement, that no one "threatened [him] with anything or promised [him] anything in order to get [him] to enter this plea, and that the trial court would make a sentencing determination at a later date. Given this evidence, the post-conviction court found the Petitioner's testimony to lack credibility. The post-conviction court stated, "[t]he transcript of the plea acceptance hearing supports the conclusion that Petitioner fully understood the consequences of his plea, and nothing in that transcript suggests Petitioner had any problem with his attorney's performance." See Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (A petitioner's testimony at a guilty plea hearing "constitute[s] a formidable barrier" in any subsequent collateral proceeding because "[s]olemn declarations in open court carry a strong presumption of verity."). The post-conviction court noted that trial counsel "discussed Petitioner's potential sentencing ranges with him and told Petitioner that a guilty plea represented perhaps his only possibility for being sentenced to probation." Further, the post-conviction court stated that trial counsel "attempted to obtain the best sentence possible for Petitioner during plea negotiations" and determined that "[s]uch actions were well within the range of competence expected for criminal defense attorneys." Ultimately, the post-conviction court determined that "[trial counsel]'s actions in representing Petitioner did not constitute deficient performance, and counsel's representation did not prejudice Petitioner as to these issues." The court concluded that the Petitioner "failed to establish his guilty plea was unknowing or involuntary."

A review of the sentencing hearing transcript also demonstrates that the Petitioner entered his guilty pleas to avoid the potential of a much harsher sentence, rather than on trial counsel's alleged assurance that the Petitioner would receive probation. The trial court asked the Petitioner why he pleaded guilty, and the Petitioner replied, "I pl[ed] guilty at that time because y'all said if I didn't plead guilty . . . my severity and my punishment would be worse[]." The Petitioner told the court that he decided to forgo a trial to avoid a consecutive sentence. When asked by the trial court if he wanted to withdraw his guilty plea, the Petitioner replied, "No." Based on our review, the record does not preponderate against the determination of the post-conviction court. Accordingly, the Petitioner has failed to establish deficient performance or prejudice arising therefrom. He is not entitled to relief.

**II. Motion to Suppress.** Next, the Petitioner contends that trial counsel "failed to properly pursue the suppression issues that [the Petitioner] consistently identified as central to his defense." He acknowledged that trial counsel filed a motion to suppress on his behalf, but he was aggrieved that no hearing on the issue was ever held. The Petitioner further admitted that he was stopped for speeding and that officers sought to search his vehicle based on the odor of marijuana emanating from it. He explained that he initially refused to exit the vehicle or permit a search until a supervising officer arrived. Once a supervising officer came to the scene, the Petitioner complied, exited the vehicle, and officers conducted a search that uncovered four hundred and fifty-six grams of marijuana, fifty-four grams of cocaine, and thirteen grams of crack cocaine in the glovebox.

Trial counsel testified that the Petitioner was "very adamant" about filing a motion to suppress. Counsel stated that he discussed the basis for the stop with the Petitioner and, based on his professional experience, did not believe there was a valid basis for filing such a motion. Nevertheless, trial counsel confirmed that he filed the motion to suppress, but the trial court never conducted a hearing on it. Given this evidence, the post-conviction court found that the Petitioner failed to establish that trial counsel's conduct prejudiced him. The post-conviction court noted that "the only evidence Petitioner presented regarding his claim that the search of his vehicle was illegal was his own self-serving testimony," and the court did not find the Petitioner's testimony credible. The court emphasized that the Petitioner failed to present testimony from the officers involved in the stop and search. See Phillips v. State, 647 S.W.3d 389, 404 (Tenn. 2022) (citations omitted) ("to establish a successful claim of ineffective assistance of counsel based on counsel's failure to file a motion to suppress evidence on Fourth Amendment grounds, the petitioner must prove: "(1) a suppression motion would have been meritorious; (2) counsel's failure to file such motion was objectively unreasonable; and (3) but for counsel's objectively unreasonable omission, there is a reasonable probability that the verdict would have been different absent the excludable evidence."). Further, the post-conviction court determined that the circumstances surrounding the stop and search, as confirmed by the Petitioner, if presented at a suppression hearing, would have resulted in a finding that the stop and search was valid. Thus, the trial court concluded that "there is nothing in the record to contradict counsel's reasoned assessment" that the motion to suppress would have been denied.

Upon our review, the record does not preponderate against the determination of the post-conviction court. Accordingly, the Petitioner is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the post-conviction court.

s/ **Camille R. McMullen**

CAMILLE R. MCMULLEN, JUDGE

- 11 -